# The Directors of the Poor, &c., of Northampton Co. *versus* The Overseers of the Poor of Limestone Township.

1. No special mode is provided for appeal from orders of removal of paupers.

2. Ordinarily an appeal is taken directly from and in the tribunal of judgment, and is a declaration made to it of an intention to be heard by a higher tribunal.

3. In appeals in removal cases, there is no provision for a record by the magistrates.

4. The Court of Quarter Sessions is the only tribunal where the trial of a controverted question of settlement can be had; there is no provision for a hearing before the magistrates.

5. An appeal from an order of removal may be made by notice to the district from which the removal is made, and petition to the Quarter Sessions to allow the appeal without previous declaration of appeal to the magistrates making the order.

At Philadelphia, January 27th 1871. Before THOMPSON, C. J., AGNEW and WILLIAMS, JJ. SHARSWOOD, J., at Nisi Prius.

Certiorari to the Court of Quarter Sessions of *Montour county* : Of October Term 1870.

On the 28th of July 1868, H. R. Montgomery and J. T. Heddens, two justices of the peace of Montour county, adjudged that Rebecca Balliet, a pauper found in the township of Limestone, in that county, had her last legal settlement in Northampton county, and ordered the overseers of the poor of Limestone township to convey her from the county of Montour and deliver her to the directors of the poor of Northampton county, together with the order, &c.

The directors of the poor of Northampton county served the following notice, signed by them, on the overseers of the poor of Limestone township :—

"To the Overseers of the Poor of the township of Limestone, in the county of Montour : Take notice, that we the Directors of the Poor and House of Employment of the county of Northampton, do intend at the next Court of Quarter Sessions of the Peace,

to be holden at Danville, in and for the said county of Montour, to commence and prosecute an appeal from the order of Hugh Montgomery and J. T. Heddens, two of the justices of the peace of the said county of Montour, for the removal of Rebecca Balliet, a pauper, from the said township of Limestone to the county of Northampton.   September 7th 1868."

On the 21st September 1868, the petition for appeal, with copy of order of removal and notice of appeal by the directors of the poor, &c., of Northampton county, was read and filed, and the same day the appeal was allowed by the court.

On the 22d December 1868, the overseers of Limestone moved the court to strike from the record all the proceedings in this case, because no appeal has ever been entered by the defendant from the order of removal; on the 23d December 1868, the rule to strike off was made absolute.

On the 17th February 1869, the bill of costs of plaintiffs was allowed, and the court ordered the costs of the proceedings to be paid by the directors of the poor of Northampton county on or before the first day of the then next term.

On the 17th May 1869, this order was renewed, and on the 23d September 1869, the court granted a rule on the directors of the poor, &c., of Northampton county to show cause why an attachment should not be issued against them for non-payment of expenses, &c.   February 23d 1870, this rule was made absolute.

A certiorari at the instance of the Directors, &c., of Northampton county, was issued from the Supreme Court, and the several orders of the court below were assigned for error.

*J. Y. Greir* (with whom was *J. W. Comley*), for the certiorari.

*E. H. Baldy*, contrà.

The opinion of the court was delivered, February 9th 1871, by
AGNEW, J.—The Poor Law relating to appeals from orders of removal is obscure and somewhat peculiar.  A remarkable feature is, that no special mode of appeal is provided.  There must have been a motive for this on the part of the revisers, who were familiar with such proceedings, and had made provisions for appeals in other laws revised by them.  Ordinarily an appeal is taken directly *from* and *in* the tribunal of judgment, and is a declaration made to it of an intention to be heard by a higher tribunal.  As when Paul, a Roman citizen, said to Festus, "I appeal unto Cæsar," and Festus, having conferred with the council, said, "Hast thou appealed unto Cæsar? unto Cæsar shalt thou go."  But in the present instance an examination of the proceeding and the nature and effect of the order of removal reveals features making a direct appeal from the magistrates often

[Directors of Northampton *v*. Overseers of Limestone.]

perplexing and inconvenient. The first feature is the want of any provision for a record by the magistrates. Complaint must be made (whether orally or in writing is not said), by the overseers of the district where the pauper has (or is likely to) become chargeable to a magistrate of the county. The magistrate takes to his assistance another magistrate of the county, but no provision is made for a notice, or for a hearing, or for the evidence, or a record to be kept by either or both of them. The hearing and the issuing of the warrant or order of removal would seem to be *ex parte*. The reason probably is that the removal may be to a distant place within or without the state, rendering notice difficult and dilatory, while prompt action may be necessary. The order of removal actually sets forth the complaint of the overseers, that due proof of the settlement has been made, the judgment of the magistrates and the order to remove, and ends by directing the order or a true copy to be delivered to the overseers of the district to which removal is made, and requires them to receive the pauper. Then the 18th section of the Act of 13th June 1836 requires the overseers of the district to which removal is made to receive the pauper under a penalty of twenty dollars for neglect or refusal. Under this proceeding the first notice the overseers of a district will probably have, will be the delivery of the order and the pauper at the same time. Now it is obvious, from the want of any provision as to a record of the proceeding, or by whom it is to be kept, and of any mode or place of appeal defined, the overseers to whom the order and the pauper are delivered, when at a distance, must be at a great loss to know when, where and how to appeal. With such an order in their hands, and ignorant of all else except what appears on its face, the only convenient and feasible mode of appeal to them would be to notify the overseers of the poor making the removal of their intention to appeal to the next Court of Quarter Sessions. Indeed, that court appears to be the only tribunal where the trial of a controverted question of settlement can be had, there being no provision for a hearing before the magistrates.

A proceeding therefore by notice to the overseers removing the pauper, and a petition to the court to be heard on appeal, seems to accord well with the *ex parte* character of the order of removal, and the want of a regular hearing and judgment of the magistrates between litigant parties. The 19th and 20th sections of the Act of 1836, also lend countenance to this view. The 19th does not say the appeal shall be taken *from* the judgment of the magistrates, but it says *to* the next Court of Quarter Sessions, and it provides that if there be any defect in the form of such order of removal the court shall amend it, and then proceed to hear the cause on the merits, and then provides that no such cause shall be proceeded in unless reasonable notice shall have been

[Directors of Northampton *v.* Overseers of Limestone.]

given by the appellant to the overseers of the district from which the removal shall be made.    The next section (20th), directs that, "the Court of Quarter Sessions, upon every appeal in case of settlement, *or on proof being made before them of notice thereof as aforesaid* (though the appeal be not *afterwards prosecuted*), shall at the same session order the party in whose behalf such appeal shall be determined, *or to whom such notice did appear to have been given,* such costs and charges as the said court shall consider reasonable and just to be paid by the overseers, or other person against whom such appeal shall be determined, *or by the person who gave such notice.*"    Thus the section itself refers to the notice of appeal in the alternative, and as a mode of proceeding to take it, thereby strengthening the view that it may be taken not *from* the magistrates, but directly *to* the court.    Now in view of the *ex parte* proceeding before the magistrates, the want of any prescribed mode of appeal, the necessity of distant districts proceeding by notice, and coming into court at once by petition, and the evident recognition in the 20th section of this mode of proceeding, we must declare this mode of appeal to be warranted by the Act of 1836, and that the court below erred in striking off the appeal on the ground that no previous declaration of the appeal had been made to the magistrates.    We do not mean to say that no record can be kept by the magistrates of their proceedings or that no appeal can be entered before them, but that the Poor Law recognises an appeal, by notice to the overseers making the removal and by petition to the court to be heard thereupon.

The order of the Court of Quarter Sessions striking off the appeal is therefore reversed, the appeal ordered to be restored, and a *procedendo* awarded.